UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERMINALES PORTUARIOS TERMIPORT, S.A., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-3565 |
| | § | |
| SAXON ENERGY SERVICES DEL ECUADOR, S.A., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are Saxon's motion for summary judgment and motion to compel arbitration, and Terminales'motion to dismiss. Dkts. 19, 20, & 24. Upon consideration of the motions, responses, replies, oral argument, and the applicable law, Saxon's motion for summary judgment and motion to compel arbitration are DENIED. Moreover, having denied Saxon's motion to compel arbitration, the court's jurisdiction over this matter is at an end. Accordingly, any remaining issues not covered by the court's denial of Saxon's motion to compel are DISMISSED WITHOUT PREJUDICE to refile in the proper forum. And, all pending motions are DENIED AS MOOT.

**BACKGROUND**

In August, 2004, Saxon hired DHL Danzas Air & Ocean to arrange transport of two drilling rigs—Rig 59 and Rig 60—from the Port of Houston to Guayaquil, Ecuador. Dkt. 15. DHL hired West Coast Industrial Express to carry the rigs. *Id.* West Coast hired Tradinter to be the ship's agent. *Id.* Tradinter then hired Terminales as stevedore.[1] *Id.* On August 25, 2004, Terminales

---

[1] At oral argument Terminales asserted that the stevedore agreement was little more than an informal oral contract.

allegedly dropped Rig 59 during unloading. *Id.* On May 19, 2006 Saxon filed its notice of arbitration regarding the damage to Rig 59, seeking to compel arbitration in Houston pursuant to the bill of lading. Saxon sought to compel the carrier and the stevedore to arbitrate.

On November 7, 2006, Terminales filed a request for declaratory judgment that (1) it was not subject to the bill of lading and therefore could not be compelled to arbitrate; (2) the matter is time barred under the United State Carriage of Goods by Sea Act; and (3) the alleged damage was caused by defects in the cargo and not by fault of the stevedore. Dkts 1 & 12. Saxon answered and counterclaimed for a declaratory judgment that Terminales is bound by the bill of lading and therefore subject to arbitration. Dkts. 15 & 18. Saxon then filed a motion for summary judgment and motion to compel seeking essentially the same finding as their counterclaim. Dkts. 19 & 20. Terminales responded and filed a motion to dismiss the counterclaims. Dkt. 24. The parties appeared before the court for oral argument on December 4, 2007

## ANALYSIS

**A.    JURISDICTION**

As a threshold matter, Terminales predicates this court's jurisdiction on diversity under 28 U.S.C. § 1332. However, under the plain language of §1332, the court does not have jurisdiction. Each of the four possible combinations of parties described in §1332 requires at least one United States citizen. The parties here are both citizens of Ecuador. Jurisdiction cannot be created by consent of the parties. *Howrey v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). Terminales also argues that the court has jurisdiction over the matter pursuant to 28 U.S.C. § 1333, because the claim is a maritime dispute about damage to cargo. Saxon concurs. While jurisdiction between two foreign nationals can be proper under §1333, the court may, in its discretion, decline to exercise that

jurisdiction. *Canada Malting Co. v. Patterson Steamships*, 285 U.S. 413, 418, 52 S. Ct. 413 (1932); *Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F. 2d 157 (5th Cir. 1992). The presumption for retaining jurisdiction is strong, "unless special circumstances exist to show that justice would be better served by declining it." *Motor Distributors, Ltd. v. Olaf Pdereson's Rederi A/S*, 239 F. 2d 463, 465 (5th Cir. 1957) (citing *The Belgenland*, 114 U.S. 355, 367, 5 S. Ct. 860 (1885)). Here however, the facts strongly support declining jurisdiction. Both Terminales and Saxon are Ecuadoran companies. Tradinter, the ship's agent who hired Terminales under an oral contract to unload the vessel, is also an Ecuadoran company. The accident happened while the vessel was docked in Guayaquil, Ecuador. With the possible exception of the nationality of the vessel itself—a fact not given to the court—the only connection with the United States is the arbitration clause in the Bill of Lading that specified any arbitration would be held in Houston, Texas under the Rules of the Houston Maritime Arbitrators Association. Since, as described below, the court finds that Terminales is not a party to the bill of lading, even that tenuous connection is lost. In short, the facts of this case are close enough to those in *Canada Malting* to justify overcoming *The Belgenland*'s presumption of jurisdiction. *Compare Canada Malting*, 285 U.S. at 417-18 (parties and interests from a single country - collision occurred in United States' waters between Canadian vessels with Canadian crews and material witnesses) *with The Belgenland*, 114 U.S. at 356-57 (parties and interests from disparate countries - collision took place on the high seas between vessels of Belgian and Norwegian nationalities). Therefore, the court declines to exercise jurisdiction pursuant to 28 U.S.C. § 1333.

However, the court does have jurisdiction under the Inter-American Convention on International Commercial Arbitration ("the Convention") to determine whether to compel arbitration.

3

9 U.S.C. § 301 et seq.; *Bautista v. Star Cruises*, 396 F.3d 1289, 1295 (11th Cir. 2005); *China Minmetals Materials Import & Export Co. v. Chi Mei Corp.*, 334 F. 3d 274, 278 (3rd Cir. 2003). But, since the Convention is the sole basis for the court's jurisdiction in this case, any issues beyond the scope of the Convention—liability and COGSA time-bar—are outside the court's jurisdiction.

**B.      Motion to Compel**

To determine whether parties should be compelled to arbitrate is a two-step inquiry. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). The threshold question is "whether there is a valid agreement to arbitrate between the parties." *Id.* (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)). The question of whether there is a valid agreement is governed by state law and ignores the strong federal policy favoring arbitration. *Id.* The parties do not dispute the fact that Terminales is not a signatory to the bill of lading. Indeed, language in the bill of lading would suggest that Terminales is expressly *not* subject to arbitration with Saxon.

> It is hereby expressly agreed that no servant or agent of the carrier (including every independent contractor from time to time employed by the Carrier *and all stevedores, terminals, agents, and the managers of the vessel*) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant [Saxon] for any loss damage or delay arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course or in connection with his employment.

Dkt. 28, Ex. A. In order to bind a non-signatory to the arbitration clause in a bill of lading, the party seeking arbitration must at the very least demonstrate that the non-signatory in some way subsequently consented to be bound. *Rice Co. S.A. v. M/V Nalinee Karee*, 2007 WL 26794, at *1 (S.D. Tex. Jan. 3, 2007) (citing *Lowrey & Co. v. S.S. Le Moyne D'Iberville*, 253 F.Suoo. 396, 398 (S.D.N.Y. 1966)). Saxon offers no evidence to show that Terminales consented to be bound by the bill of lading. Instead Saxon argues that the language of the arbitration clause itself is broad enough

to cover third parties like Terminales.  The bill of lading states that "[a]ny dispute arising under or *in connection with* this Bill of Lading, *whether in contract or tort*, shall be *referred to final and binding arbitration in Houston, Texas*." Dkt. 15.  Saxon urges that the language "any dispute arising under or in connection with" is broad enough to encompass third parties.[2]  However, Saxon has conflated the first and second step of the inquiry.  The second step of the inquiry addresses whether the scope of the arbitration agreement covers the dispute in question.  *Banc One*, 367 F.3d at 429.  This clause is clearly broad enough to cover almost any eventuality that should arise *between the contracting parties*.  Saxon reminds the court that bills of lading should be interpreted using ordinary principles of contract law.  Dkt. 19 (citing *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 823 (2d Cir. 2006)).  The court agrees and declines to allow Saxon to create duties for third parties who are not a party to or a named beneficiary of the contract.  Therefore, because the court finds that Terminales is not a party to the bill of lading, the inquiry stops here.

## CONCLUSION

Pending before the court are Saxon's motion for summary judgment and motion to compel arbitration, and Terminales' motion to dismiss.  Dkts. 19, 20, & 24.  The court finds that Terminales is not a party to the bill of lading and is not bound by the arbitration clause.  Therefore, Saxon's motion to compel and motion for summary judgment are DENIED.  Additionally, as detailed above, the court declines to retain jurisdiction over matters not covered by the "Convention," 9 U.S.C. § 301

---

[2] For this proposition Saxon cites *Alucentro Div. Dell'Alusuisse Italia S.P.A. v. M/V Hafnia*, 785 F.Supp. 155 (M.D. Fl. 1991).  However, in *Hafnia*, the issue was whether an arbitration clause in the charter party incorporated by reference into the bill of lading could be enforced against a party to the bill of lading.  *Hafnia*, 785 F.Supp at 156.  The objecting party there had manifested a willingness to be bound by the bill of lading.  Here, Terminales claims that its agreement with Tradinter was at best an oral contract unrelated to the bill of lading entirely.

et seq. Therefore, all other motions before the court are DENIED AS MOOT.

Accordingly, the court DECLARES that Terminales is not a party to the bill of lading and therefore not subject to arbitration pursuant to the arbitration clause in the bill of lading and renders JUDGMENT for the plaintiff as to that issue.

Additionally, it is ORDERED that all remaining claims and counterclaims are DISMISSED WITHOUT PREJUDICE because this court declines to exercise jurisdiction over them.

This is a FINAL JUDGMENT.

Signed at Houston, Texas on December 11, 2007.

_____
Gray H. Miller
United States District Judge